# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

MARLON BLACHER,

    Plaintiff,

v.

S. JOHNSON,

    Defendant.

Case No. 1:12-cv-01159-EPG (PC)

ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUR-REPLY AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(ECF NOS. 106 & 121)

## I.    PROCEDURAL HISTORY

Marlon Blacher ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Both parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1] (ECF Nos. 5 & 26). This case now proceeds on Plaintiff's complaint (ECF No. 1) against Chief Deputy Warden S. Johnson ("Defendant") on Plaintiff's claim relating to repeated unclothed body searches in the view of female correctional officers and others. (ECF Nos. 17 & 20).

On May 23, 2017, Defendant filed a motion for summary judgment.[2] (ECF No. 106). On June 28, 2017, Plaintiff filed his opposition to the motion for summary judgment and

---

[1] As Magistrate Judge Gary S. Austin noted, "[o]n July 30, 2012, Plaintiff filed a form consenting to the jurisdiction of a Magistrate Judge. (Doc. 5.) On October 15, 2013, Defendant Johnson filed a form consenting to the jurisdiction of a Magistrate Judge. (Doc. 26.) Subsequently, on October 30, 2013, Plaintiff filed a form declining the jurisdiction of a Magistrate Judge. (Doc. 27.) Plaintiff may not withdraw his consent in this manner. Once a civil case is referred to a magistrate judge under section 636(c), the reference can be withdrawn only by the district court, and only 'for good cause shown on its own motion, or under extraordinary circumstances shown by any party.' Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1993) (quoting Fellman v. Fireman's Fund Ins. Co., 735 F.2d 55, 58 (2d Cir.1984)); 28 U.S.C. § 636(c)(6); Fed. R. Civ. P. 73(b). There is no absolute right, in a civil case, to withdraw consent to trial and other proceedings before a magistrate judge. Dixon at 480. Plaintiff has not shown any extraordinary circumstances to justify withdrawal of his consent." (ECF No. 29, p. 1 n.1).

[2] Concurrently with her motion for summary judgment Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

objected to the admissibility of his deposition. (ECF Nos. 111 & 114). On July 3, 2017, Defendant filed a reply. (ECF No. 117). On July 14, 2017, Plaintiff filed an addendum to his declaration.[3] (ECF No. 118, p. 3).

On July 3, 2017, Plaintiff filed what the Court construes as a sur-reply. (ECF No. 120). On July 31, 2017, Defendant filed a motion to strike Plaintiff's sur-reply. (ECF No. 121). On August 16, 2017, Plaintiff filed his opposition to Defendant's motion to strike Plaintiff's sur-reply. (ECF No. 122).

Defendant's motion for summary judgment and motion to strike are now before the Court. For the reasons that follow, the Court will deny Defendant's motion to strike, and deny Defendant's motion for summary judgment.

**II. DEFENDANT'S MOTION TO STRIKE**

Defendant asks the Court to strike Plaintiff's sur-reply because Plaintiff was never given leave to file a sur-reply, and because "Plaintiff's improper sur-reply frivolously denies arguments made by Defendant in their [sic] moving papers and provides more inflammatory conjecture regarding correctional staff. Accordingly, the Court should grant this motion to strike, and strike Plaintiff's sur-reply." (ECF No. 121, p. 2).

Given the lack of prejudice to Defendant in allowing Plaintiff to file a sur-reply, the Court will treat the sur-reply as including a request to file a sur-reply, and grant it *nunc pro tunc*. Accordingly, Defendant's motion to strike will be denied. However, the Court notes that the sur-reply does not change the Court's analysis. Most of the sur-reply involves Plaintiff reiterating points he already made.

\\\
\\\
\\\

---

[3] Because Plaintiff's declaration was not made under penalty of perjury, the Court required Plaintiff to resubmit it. (ECF No. 116). While Plaintiff only submitted an addendum to the declaration declaring under penalty of perjury "that the foregoing is true and correct" (ECF No. 118, p. 3), the Court will treat Plaintiff's declaration as if it were signed under penalty of perjury. Plaintiff has stated that he was unable to resubmit the entire declaration (which he refers to as an affidavit) because he was unable to obtain a copy of his declaration. (ECF No. 119, p. 3).

## III. BACKGROUND

### a. Plaintiff's Allegations in the Complaint

While Plaintiff was housed at California State Prison, Corcoran, he was assigned to work in the Security Housing Unit ("SHU") kitchen. At the end of each workday, the inmates assigned to work in the SHU kitchen were subjected to an unclothed body search before returning to their housing area. The searches were conducted by male correctional officers (C/Os). In the process of the search, the inmates were required to step up to the table, completely disrobe, move their genitals around, and squat and cough. These searches were conducted in plain view of everyone present, including other inmates and staff.

The area where the searches were conducted was located near an open door where female C/Os were positioned. The female C/Os had a direct view of the search area. "Many times, as plaintiff stood there naked during the search, plaintiff would be making direct eye contact with the female C.O.s, which would sometimes elicit a smirk or some other form of, seemingly condescending, response from a female C.O. (usually either C.O. Gutierrez, Arnette, or Mills)."

"Plaintiff was never in dispute of the need for staff to conduct the searches, the dispute arises from the way the searches were being conducted, which was in violation of established policy." Plaintiff submitted an inmate grievance concerning the issue, indicating that the searches violated California Department of Corrections and Rehabilitation ("CDCR") policy that required searches to "1) be conducted in a manner which avoids embarrassment and indignity to the inmate and 2) be outside the view of others whenever possible."

Defendant was made aware of the problem on January 3, 2012, yet failed to take any corrective measures.

### b. Screening and Ninth Circuit Ruling

On September 7, 2012, the Court[4] dismissed this case, with prejudice, for failure to state a claim. (ECF No. 6, p. 4). Plaintiff appealed. (ECF No. 9). The United States Court of

---

[4] Magistrate Judge Gary S. Austin was the assigned magistrate judge until June 24, 2016. (ECF No. 44).

Appeals for the Ninth Circuit reversed in part, holding that "the district court erroneously dismissed Blacher's claim against defendant Chief Deputy Warden Johnson alleging an unreasonable search because the allegations in the amended complaint, liberally construed, were 'sufficient to meet the low threshold for proceeding past the screening stage.' *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012). The scope of the intrusions alleged by Blacher exceeds searches this court has previously sanctioned. *See, e.g.*, *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (strip searches that involve female guards' infrequent or casual observation of nude male prisoners, or observation at a distance do not unreasonably infringe upon prisoners' privacy rights provided there is a legitimate reason underlying the observation); *see also Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (setting forth requirements for supervisory liability)." (ECF No. 17, pgs. 2-3).

In accordance with the Ninth Circuit's order, the Court issued an order finding service of the complaint appropriate, stating that "[t]his action therefore proceeds against Chief Deputy Warden S. Johnson on Plaintiff's claim relating to the unclothed body search." (ECF No. 20, p. 2).

### IV. DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

Defendant argues that "the undisputed facts reveal that the contested searches complied with policy and for security purposes, there were no alternative location for the searches to be conducted. Additionally, since Defendant Johnson took appropriate steps to investigate the searches and acted reasonably under the circumstances, she is entitled to qualified immunity." (ECF No. 106-2, p. 1). Defendant also argues that the searches were reasonable under the applicable Fourth Amendment standards. (Id. at 3-6).

According to Defendant, "[u]nclothed body searches following shifts in the SHU kitchen are conducted in the corridor of the vocation work area, as inmates leave the work change area. (DUF 8.) The remaining rooms in the work change area do not afford privacy, nor are they available for routine search procedures. (DUF 9.)" (ECF No. 106-2, p. 2).

In his opposition, Plaintiff alleges that there were multiple available locations where the searches could have taken place with additional privacy. (ECF No. 114, pgs. 10-11).

Additionally, according to Plaintiff, the searches that took place violated CDCR policy. (Id. at 6). Plaintiff also argues that Defendant is not entitled to qualified immunity because she violated Plaintiff's clearly established Fourth Amendment rights. (Id. at 6-7).

## V. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the court must determine "whether a fair-minded jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040,

1045 (9th Cir. 1989), citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

### b. Unreasonable Searches Under the Fourth Amendment

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (en banc).

The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. Bull, 595 F.3d at 974–75. "[I]ncarcerated prisoners retain a limited right to bodily privacy." Michenfelder, 860 F.2d at 333 (9th Cir. 1988). The United States Court of Appeals for the Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-

respect and personal dignity." York v. Story, 324 F.2d 450, 455 (9th Cir. 1963); see also Michenfelder, 860 F.2d at 333 (same). "The [Supreme] Court [has] obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder, 860 F.2d at 332.

However, "we cannot assume from the fact that the searches cause immense anguish that they therefore violate protected Fourth Amendment interests. Far from it, our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited." Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc). "[A]ssigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." Michenfelder, 860 F.2d at 334 (citing Grummett v. Rushen, 779 F.2d 491, 494–95 (9th Cir. 1985)) (parallel citation omitted).

### c. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

\\\

\\\

## VI. UNDISPUTED FACTS

Plaintiff worked at the SHU kitchen at California State Prison, Corcoran. (Defendant's Statement of Undisputed Fact ("SUF") 6; ECF No. 1, p. 3).[5] After Plaintiff's shift ended, he was subjected to an unclothed body search. (SUF 12; ECF No. 1, p. 3). The searches were conducted in the corridor that runs through the vocational work area. (SUF 8; ECF No 114. pgs. 5-6). During the searches Plaintiff was required to manipulate his genitalia, and squat and cough. (SUF 12; ECF No. 1, p. 3).

There were legitimate reasons to conduct the searches. (SUF 10; ECF No. 1, p. 4). It is how the searches were conducted that led to Plaintiff filing his complaint. (ECF No. 1, p. 4).

Defendant was the Acting Chief Deputy Warden at all times relevant to the allegations in the complaint. (SUF 3; ECF No. 114, p. 16). Defendant was responsible for reviewing Plaintiff's appeal regarding the searches at the second level of review. (ECF No. 106-6, p. 2, ¶ 4; ECF No. 1, pgs. 4 & 14-15).

## VII. ANALYSIS

To begin, the Court notes that Plaintiff objected to the admissibility of his deposition transcript. (ECF No. 114, pgs. 1-2). Plaintiff cites to Federal Rule of Civil Procedure 32(b), but does not allege that his testimony would be inadmissible if he were present and testifying. Instead, Plaintiff objects on the grounds that the deposition is not "true, correct, [and] complete." (Id. at 2). Plaintiff's objection will be overruled. Plaintiff did not make any evidentiary objections to the portions of the transcript that Defendant cited to in her motion for summary judgment, or even identify any of the alleged inaccuracies in the transcript.

Moreover, Plaintiff had the opportunity to request a review of his transcript. See Federal Rule of Civil Procedure 30(e)(1). Had he taken advantage of this opportunity, if there were any changes he wanted to make to the transcript "in form or substance," he could have

---

[5] The Court notes that, at times, there are discrepancies between the allegations in Plaintiff's opposition to the motion for summary judgment and the allegations in the complaint. As Plaintiff has not been given leave to amend his complaint (and as Plaintiff may not amend his complaint by filing an opposition to a motion for summary judgment), when there is a discrepancy between the allegations in the complaint and in the opposition the Court will refer to the allegations in the complaint.

signed "a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1)(B). If Plaintiff had signed such a statement, the officer would have had attach to the transcript any changes Plaintiff made. Fed. R. Civ. P. 30(e)(2). However, it does not appear that Plaintiff took advantage of these procedures.

Moving on to the merits of the motion, the focus in this case is the place where the searches were conducted. Based on the undisputed facts, after Plaintiff was finished working at the SHU kitchen, he was taken from the kitchen to the vocational work area corridor for the search.[6] It does not appear to be disputed that female C/Os could view Plaintiff while he was being strip searched.[7]

As mentioned above, the Ninth Circuit has long recognized that "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." York, 324 F.2d at 455. However, in Michenfelder Ninth Circuit reiterated that "assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference." 860 F.2d at 334 (citing Grummett, 779 F.2d at 494–95) (parallel citation omitted).

Defendant submitted evidence, in the form of the declaration of Correctional Officer Leyva, that there was no area available that would have provided complete privacy. (ECF No. 106-5, p. 2, ¶ 6). The other "areas in the work change building are occupied by staff offices or other vocational ventures. There is no other area for the searches to be conducted. Indeed,

---

[6] It is not clear how many times Plaintiff was strip searched, or how many times Plaintiff was viewed by female C/Os during the search. However, Plaintiff stated in his complaint that he was viewed my female C/Os while he was being strip searched "[m]any times." (ECF No. 1, p. 4). As Plaintiff's complaint is verified, his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

[7] If it is disputed, Plaintiff has submitted evidence, in the form of sworn testimony, that female C/Os viewed him while he was being strip searched. (ECF No. 1, p. 4). While Defendant argues that Plaintiff later contradicted this testimony in his deposition, and that "Plaintiff's deposition testimony reveals that female staff would lead escorts out of the work area and have an obstructed view from behind the door, when Plaintiff submitted to the search" (ECF No. 117, p. 2), this does not appear to be an accurate portrayal of Plaintiff's deposition testimony. In his deposition, in response to the question "[s]o there were females behind the officers conducting the searches," Plaintiff answered "behind the door, it was in plain view from where they were." Plaintiff's Deposition Transcript, 16:16-16:19.

taking the inmates to another area of the facility before first conducting the search would allow for secretion or disposal of contraband." (Id.).

Defendant also submitted evidence, in the form of her own declaration, that there was an investigation into Plaintiff's allegations, and "[t]he investigation revealed that all searches were in compliance with Title 15, the Department Operations Manual, and Department Vocations procedures." (ECF No. 106-6, p. 3, ¶ 6). Defendant also stated in her declaration that "[a]llowing searches to be conducted in any of the various rooms within the vocational building could allow inmates to further conceal or dispose of contraband. Simply, there is no other area within the vocational building for the inmates to be searched in private without forfeiting the goals of the search." (Id. at ¶ 8).

Conversely, Plaintiff has submitted evidence that other rooms that afforded more privacy were in fact available. (ECF No. 114, pgs. 23-24, ¶¶ 6 & 7; ECF No. 114, p. 15). Moreover, based on the floor plan provided by both parties (ECF No. 106-6, p. 13; ECF No. 114, p. 15), there appear to be places in the corridor where the searches could have been conducted that would have prevented the female C/Os from viewing Plaintiff during the strip searches (or at least obscured their view). In fact, Plaintiff stated in his deposition that simply moving the table forward "a little bit" would have prevented the female C/Os from viewing Plaintiff during the search. Plaintiff's Deposition Transcript, 17:20-18:6.[8]

Accordingly, the Court finds that there is a genuine dispute of material fact regarding whether routinely strip searching Plaintiff in a corridor where female C/Os could view Plaintiff was either harassing or unrelated to prison needs.[9] Taking Plaintiff's evidence as true for purposes of this motion for summary judgment, and drawing all reasonable inferences in Plaintiff's favor, there appears to be no legitimate reason for escorting Plaintiff to an area

---

[8] Defendant cited to this portion of the deposition in her reply. (ECF No. 117, p. 2).
[9] The Court notes that there may be a genuine dispute of material fact regarding whether the female C/Os' observations of the strip searches were infrequent and casual, or at a distance. There may also be an issue regarding the allegation that Plaintiff was subjected to a group strip search "in plain view of everyone present" (ECF No. 1, p. 3). However, as the Court has found that there is a genuine dispute of material fact regarding whether routinely strip searching Plaintiff in a corridor where female C/Os could view Plaintiff was either harassing or unrelated to prison needs, the Court need not reach these issues.

where female C/Os could see him while he was being strip searched. There were more private rooms available, and simply changing the spot where the search took place in the corridor would have afforded more privacy.

Defendant's reliance on Thompson v. Souza, 111 F.3d 694, 701 (9th Cir. 1997), is misplaced. While the Court in Thompson did note that "having the searches in an entirely separate area, as [the plaintiff] suggests, would potentially allow prisoners to discard contraband on the way to the separate area," id. at 701, the search in this case is different. In Thompson, Plaintiff was removed from his cell and immediately searched. 111 F.3d at 697. Here, it is undisputed that Plaintiff was being moved from one location to another. Additionally, Defendant provided nothing but blanket statements that conducting the search elsewhere created security concerns due to the possibility of inmates concealing or disposing of contraband. Besides the fact that these statements are conclusory assertions not backed up by any other evidence, based on the floor plan the parties provided, Plaintiff's evidence, and Plaintiff's deposition testimony that moving the table forward "a little bit" would have prevented the female C/Os from viewing Plaintiff during the search (and construing all evidence in the light most favorable to Plaintiff), there is a genuine dispute of material fact regarding whether conducting the searches elsewhere would have actually created security issues.

While there may in fact be legitimate reasons for taking Plaintiff to the corridor for the strip search and for having the table positioned where it was, the Court cannot find that those legitimate reasons are undisputed.

The Court now addresses Defendant's argument that she is entitled to qualified immunity. In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

As to the first step of the analysis, Plaintiff adequately alleged a constitutional violation (see ECF No. 17), and, as discussed above, has now supported his allegations with evidence.

As to the second step of the analysis, the Court finds that it was clearly established at the time of the incidents alleged in the complaint that "[t]he [Supreme] Court obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder, 860 F.2d at 332. "[A]ssigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are *reasonably related to prison needs* are not so degrading as to warrant court interference." Michenfelder, 860 F.2d at 334 (emphasis added) (citing Grummett, 779 F.2d at 494–95) (parallel citation omitted).

As discussed above, there is a genuine despite of material fact regarding whether the strip searches were harassing or unrelated to prison needs.

The Court notes that one Ninth Circuit panel held that "it is highly questionable even today whether prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex, or from viewing of their unclothed bodies by officials of the opposite sex. Whether or not such a right exists, however, there is no question that it was not clearly established at the time of the alleged conduct. Because [Plaintiff's] lawsuit seeks only monetary damages, not injunctive relief, we do not decide whether such a right exists." Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997).

However, citing to Michenfelder, the Ninth Circuit later clarified that "the Fourth Amendment does apply to the invasion of bodily privacy in prisons." Bull, 595 F.3d at 974. While this en banc panel did not quote any particular language, the page cited to in Michenfelder stated, "[t]he [Supreme] Court obviously recognized that not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." 860 F.2d at 332.

Accordingly, it was clearly established at the time of Defendant's alleged misconduct that conducting a strip search in plain view of members of the opposite sex for no legitimate penological reason is unreasonable, and thus violates the Fourth Amendment.

Moreover, while Defendant argues that in allowing the searches to continue she was relying on institutional policy that has not been found unconstitutional (ECF No. 106-2, p. 7),

viewing the evidence in the light most favorable to Plaintiff, the alleged strip searches appear to violate institutional policy. "An inmate is subject to an inspection of his or her person, either clothed or unclothed, when there is a reasonable suspicion to believe the inmate may have unauthorized or dangerous items concealed on his or her person, or that he or she may have been involved in an altercation of any kind. Such inspections may also be a routine requirement for inmate movement into or out of high security risk areas… All such inspections shall be conducted in a professional manner which avoids embarrassment or indignity to the inmate. Whenever possible, unclothed body inspections of inmates shall be conducted outside the view of others." Cal. Code Regs. tit. 15, § 3287(b). Here, as discussed above, Plaintiff's evidence suggests that, without creating any additional security concerns, the strip searches could have been conducted outside the view of others (or at the very least, outside the view of the female C/Os). Despite this, it appears the searches were always conducted in the view of others. Accordingly, construing all evidence in the light most favorable to Plaintiff and taking Plaintiff's evidence as true for purposes of this motion for summary judgment, at the very least there is a genuine dispute of fact regarding whether the strip searches violated CDCR policy. This further undercuts Defendant's assertion of qualified immunity.

Therefore, Defendant is not entitled to summary judgment on the issue of qualified immunity.

### VIII. CONCLUSION AND ORDER

Because the Court finds that there is a genuine dispute of material fact regarding whether routinely strip searching Plaintiff in a corridor where female C/Os could view Plaintiff was either harassing or unrelated to prison needs, and because the Court finds that Defendant is not entitled to summary judgment on the issue of qualified immunity, the Court will deny Defendant's motion for summary judgment.

///

///

///

///

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request to file a sur-reply is GRANTED *nunc pro tunc*;
2. Defendant's Motion to strike Plaintiff's sur-reply is DENIED; and
3. Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: **November 7, 2017**

/s/ Eric P. Grosj

UNITED STATES MAGISTRATE JUDGE